## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBBINS MOTOR TRANSPORTATION, INC.,<br><br>Plaintiff<br><br>v.<br><br>TRANSLINK, INC.<br><br>and<br><br>EXPRESS METAL FABRICATORS, INC.<br><br>and<br><br>TECHNIP USA CORPORATION,<br><br>Defendants | CIVIL ACTION<br><br>No. 07-150 |

### OPINION

This dispute arises from an alleged underestimate of the weight of two convection modules that plaintiff, a trucking company, hauled from Locust Grove, Oklahoma to Alberta, Canada.  Plaintiff Robbins Motor Transportation, Inc. ("Robbins" or "RMT") alleges that one of the two modules weighed 245,800 pounds, rather than 220,000 pounds as estimated by defendants, and that this discrepancy of 25,800 pounds cost plaintiff $154,739.80 in extra transportation services, permits, detention and delay.  *See* First Amended Complaint ¶¶ 20-22 (Docket No. 35, filed Nov. 11, 2007).  Plaintiff has sued

three defendants: Express Metal Fabricators, Inc. ("Express Metal"), who manufactured the equipment in Oklahoma; Translink, Inc. ("Translink"), a freight broker who, after being hired by Express Metal to arrange shipping of the equipment, contracted with plaintiff for plaintiff to haul the two loads of equipment from Oklahoma to Canada;[1] and Technip USA Corp. ("Technip"), the purchaser of the equipment and the party to whom Robbins delivered the equipment in Canada.

In its first amended complaint, plaintiff has pled three causes of action: (1) breach of contract; (2) negligent misrepresentation, fraud, and breach of contract; and (3) violation of the Interstate Commerce Act, 49 U.S.C. §§ 10741, 10701, 10761-62. *See* First Amended Complaint ¶¶ 23-45. Plaintiff's federal cause of action is based on statutes that do not apply to this case. *See* Section IV.3, *infra*. Accordingly, this court has no jurisdiction arising under federal law and instead exercises its diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]

---

[1] Translink is best described in common parlance as the "middleman" between Express Metal and Robbins.

[2] In truth, it is not immediately apparent from the amended complaint that this court has diversity jurisdiction over this case because the first amended complaint does not recite the state of incorporation of the defendants. *See* Docket No. 35 ¶¶ 2-4. For the purposes of 28 U.S.C.§ 1332, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The complaint does clearly state that "[a]ll the Defendants are domiciled in states outside/other than the Commonwealth of Pennsylvania," and specifically that defendant Technip is domiciled in California while defendants Translink and Express Metal are domiciled in Oklahoma. *Id.* at ¶5. In a hearing regarding plaintiff's original complaint, this court stated that, for the purposes of that hearing, it would "presume" for the sake of argument that this case satisfies diversity jurisdiction. *See* Transcript at 12 (October 27, 2007). Defense counsel for Technip raised

Before this court are (1) Defendant Technip's motion for summary judgment (Docket No. 47, filed April 2, 2008); (2) Defendant Express Metal's motion to dismiss for lack of personal jurisdiction or, in the alternative, for summary judgment on the merits (Docket No. 56, filed May 20, 2008); (3) Defendant Translink's motion for summary judgment (Docket No. 57, filed May 20, 2008); and (4) plaintiff's cross-motions for summary judgment as to defendants Express Metal and Translink (Docket No. 62, filed June 19, 2008).  We also consider all of the reply briefs filed by the various parties.  *See* Docket Nos. 52 (plaintiff's reply to Technip's motion), 54 (Technip's reply to plaintiff's reply),[3] 55 (plaintiff's reply to Technip's reply), 62 (plaintiff's reply to Translink's and Express Metal's motions), 69 (Translink's reply to plaintiff's cross-motion), 70 (Express Metal's reply to plaintiff's cross-motion).

---

no objections to this presumption during the hearing, nor has any defendant done so in its subsequent briefing on summary judgment.  This court has no reason to believe that any of the defendants is incorporated pursuant to the laws of the Commonwealth of Pennsylvania.  Accordingly, to prevent further delay in this case, the court will consider the merits of the various motions before it rather than dismissing the case and calling for yet another amended complaint.  In the event that any of the defendants has been incorporated or keeps its principal place of business in this state, the court should be notified promptly.

[3] We will grant Technip's motion for leave to file a reply memorandum in support of its motion for summary judgment.  Plaintiff's opposition to this motion (Docket No. 55, filed May 19, 2008) presents no compelling reason why this court should not consider Technip's reply brief.

## I. FACTS

At the heart of the dispute are three contracts.  First, Technip contracted with Express Metal for Express Metal to manufacture two convection modules.  Technip planned to install these modules at an oil-extraction facility that Technip was building in Alberta, Canada.  As part of its performance under this contract, Express Metal was required to deliver the completed modules to the facility in Alberta.  Second, Express Metal contracted with freight broker Translink for Translink to arrange for the moving of the modules from Oklahoma to Canada.  Third, Translink contracted with Robbins for Robbins to haul the modules via truck from Oklahoma to Canada.

There are no other instances of direct contractual privity between the parties in this litigation.  The only contract signed by plaintiff Robbins is the "Truck Brokerage Trip Contract" (the "Contract") between Robbins and Translink.  *See* Complaint Exh. 4 (Docket No. 1, filed Jan. 12, 2007).  Express Metal paid Translink to arrange for the trucking services, and Translink then paid Robbins for doing the actual hauling.  *See* Deposition of Calvin Williams, Docket No. 47 Exhibit B at 9.

Robbins has provided three documents that it alleges govern its relationship with Translink.  The first, entitled "Terms and Conditions," states in pertinent part:

> Reliance by RMT: RMT may rely on information… or representations, whether oral or in writing, of Shipper with regard to the Goods and shall make and have no responsibility to make any independent inquiry or investigation regarding the Goods, including, without limitation, the size, dimensions, weight, center of gravity, stability, durability, or transportability or any other specifications ("Specifications"). . . .  Shipper shall indemnify RMT and hold RMT harmless from any against any and all damage, liability, judgment, suit,

-4-

claim, cost or expense (including, without limitation, reasonable attorneys' fees and court costs) arising directly or indirectly, in whole or in part, from any variation in the Specifications.  Shipper represents and warrants to RMT the complete accuracy and correctness of the Specifications and that the Specifications will not vary even in an immaterial fashion.

Docket No. 62 Exh. 2.

The introductory paragraph of these terms and conditions states that the terms and conditions "shall apply to the transaction described in the accompanying quotation (the "Quotation") between Robbins Motor Transportation, Inc. ("RMT") and the entity shown as the shipper (the "Shipper") thereon."  However, the price quotation attached by Robbins, which is addressed to Translink, does not list any party as the "shipper."  *See id.*  The price quotation is addressed to Translink.  It makes no reference to either Technip or Express Metal.

Second, Robbins has provided a document entitled "Transportation Estimate/Purchase Agreement."  *See id.*  That document does not list a "shipper," but it does list an "Origin" ("Express Metal Fabricators"), a "Destination" ("Technip USA Corp."), and a party designated as "Bill To" ("Trans Link Inc.").  The "Transportation Estimate/Purchase Agreement" states that it "is to be considered a Transportation Estimate" until "signatures are provided," at which point it "changes from a Transportation Estimate to a Purchase Agreement." It is signed "Agreed to" by Ted Vogle, president of Translink, but it is not signed by any Robbins representative.

The Transportation Estimate/Purchase Agreement contains the following "Governing Rules and Regulations":

> Transportation is made in accordance to Robbins Motor Transportation, Inc. standard terms and conditions and "Uniform Straight Bill of Lading." The signature by carrier's representative on any other Bill of Lading other than the uniform straight Bill of Lading acknowledges only the carrier's acceptance of the freight and not its terms and conditions.

In a declaration, however, Vogle, Translink's president, states that terms and conditions were neither attached to nor part of the transportation agreement at the time that he signed it and that he has not assented to those terms and conditions since. *See* Docket No. 69 Exh. 6 ¶¶ 2-4.

Third, Robbins has provided a "Truck Brokerage Trip Contract" signed by representatives of Robbins and Translink. In that contract, Robbins is called the "carrier" and Translink is called the "broker." Express Metal and Technip are referred to as the places of "pick-up" and "delivery," respectively.

Robbins charged and set its price for shipping the two modules – $436,000 ($218,00 per module) – in part according to the weight of the two modules that it contracted to transport from Express Metal to Technip. Express Metal and Translink both told Robbins that the weights of the two modules were approximately 220,000 pounds (Module 1) and 230,000 pounds (Module 2), respectively. Robbins alleges that the weight of one of the modules was correctly estimated but that the other module weighed 25,800 pounds more than estimated. According to Robbins, the extra weight resulted in $154,739.80 of additional costs stemming from the need for additional crane services, trucking services, bucket services, special required permits, and detention and delay. Defendants Express Metal and Translink challenge the sufficiency of the evidence

presented by Robbins in support of the alleged weight discrepancy and resultant damages, *see* Docket No. 69 ¶¶ 7-8, but present no independent contradictory evidence.

Regarding the communication of the weight figures, the deposition testimony establishes, *inter alia*, that 1) Robbins obtained the weight figures from Translink; 2) Translink obtained the weight figures from Express Metal; 3) Robbins also obtained the weight figures directly from Express Metal; and 4) Technip did provide a weight estimate to Express Metal, but that estimate was never communicated to either Translink or Robbins, nor was it relied upon by Express Metal;[4] Express Metal did, however, use Technip's technical drawings of the modules.[5]

Joe Robbins, president of Robbins, acknowledged in his deposition that he was aware that the weights provided by Express Metal and Translink were "estimated weights" that represented a "pretty big guess."  *See* Docket No. 56 Exh. C at 91.  Daniel

---

[4] In its response to Technip's motion, Robbins contends that Technip provided Express Metal with a weight of 220,000 pounds for each of the modules.  *See* Docket No. 52 at 3.  However, the emails that Robbins cites to for support of this contention do not establish the facts as they are represented by Robbins.  *See* Docket No. 52 Exhibit 5.  In contrast, Technip employee Robert Evans's deposition testimony clearly states that Technip's estimate of Module One was 127,000 kilograms or approximately 279,500 pounds. *See* Docket No. 47 Exhibit D at 39.  279,500 pounds is significantly heavier than both the weight estimate that Express Metal gave to Robbins (220,000 pounds) and the weight of the module alleged by plaintiff (245,800 pounds).  That said, Technip did drastically underestimate the weight of Module Two as being 45,000 kilograms or approximately 99,000 pounds.  *See* Deposition of Daniel Tomblin, Docket No. 54 Exh. C at 64-70.

[5] In his deposition, Express Metal's Daniel Tomblin stated that, although Express Metal used its own calculations instead of Technip's calculations, it did rely on the "coil weights" provided by Technip because those weights are "usually really accurate." Docket No. 54 Exh. C at 65-70.

Tomblin, an executive at Express Metal, testified in his deposition that he told a Robbins employee, prior to Robbins having hauled the modules, that the weight estimates "should be" within ten percent of the actual weight but that he was "not positive." *See* Docket No. 56 Exh. B at 16-17. These weight estimates were not based on any actual weighing of the modules, but rather were estimates derived from technical drawings of the modules, and Express Metal was never asked to conduct an actual weighing of the modules. *See* Deposition of Calvin Williams, Docket No. 47 Exhibit B at 15-17. Express Metal does not posses the type of scales capable of weighing anything as heavy as the modules. *Id.* at 17-18.

Robbins contacted both Translink and Express Metal in an attempt to recoup the costs that it alleges were a result of the incorrect weight estimate. *See* Deposition of Daniel Tomblin, Docket No. 47 Exh. B at 21-22. When, subsequent to the signing of the contract between Express Metal and Technip, Express Metal's Tomblin contacted Robert Evans of Technip to explain that there had been unforeseen costs in shipping, Technip agreed to pay a portion of that cost. *See* Deposition of Robert Evans, Docket No. 52 Exh. 8 at 13-16. Evans stated that he did not believe that Technip had a contractual obligation to pay these costs but that it chose to do so because it was "good business." *Id.* at 33-34. Evans did not recall what factors, including weight, contributed to the extra costs. *Id.* at 15.

No representatives from Express Metal ever traveled to Pennsylvania in connection with the manufacture or transportation of the modules, and Express Metal has

never maintained any offices or employees in Pennsylvania.  *See* Declaration of John

Hare, Docket No. 56 Exh. 1.  Express Metal employees did, however, meet with Robbins

employees at Express Metal's factory in Oklahoma to examine the modules.  A photocopy

of Express Metal's website pages, attached to plaintiff's motion for summary judgment,

includes maps demonstrating Express Metal's ability to transport its products to

Pennsylvania.  *See* Docket No. 62 Exh. 7.  These website pages say nothing, however,

with respect to Express Metal's actual past business practices.  Express Metal's briefing

represents, but does not corroborate with evidence, that Express Metal has only ever had

one client in the state of Pennsylvania, and that Express Metal has not done any work

with that client since 2003.  *See* Docket No. 70 at 8.      .

## II.  STANDARD OF REVIEW

When ruling on a motion to dismiss, a district court must "accept as true the facts

alleged in the complaint and all reasonable inferences that can be drawn from them."

*Markowtiz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). Granting the motion

is appropriate only "where it is certain that no relief could be granted under any set of

facts that could be proved." *Id.*

For the purposes of a motion to dismiss for lack of personal jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(2), the allegations pleaded by the plaintiff, the

non-moving party, are accepted as true and all disputed facts are resolved in favor of

plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 371 (3d Cir.2002) (quoting

*Carteret Sav. Bank. FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992)).

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see IFC Interconsult, AG v. Safeguard Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir.2006). A genuine issue of material fact exists where the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over facts is material where it could affect the outcome of the case. *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir.2003).

A party seeking summary judgment carries the initial burden of informing the district court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Belitskus*, 343 F.3d at 639. Where the non-moving party bears the burden of proof, the moving party must show that the non-moving party cannot support its case with the evidence in the record. *Celotex*, 477 U.S. at 325. In rebuttal, the non-moving party must then identify facts that create a genuine issue of dispute for trial. Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir.1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge .... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.  PERSONAL JURISDICTION

In its answer to plaintiff's original complaint, Express Metal raised lack of personal jurisdiction as an affirmative defense.  *See* Docket No. 8 at ¶ 3.[6]

Under Federal Rule of Civil Procedure 4(e), a district court may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the forum state. Pennsylvania's long-arm statute, 42 Pa. C.S. § 5322(b), permits the exercise of personal jurisdiction to the full extent allowed by the Fourteenth Amendment's Due Process Clause.

The defendant bears the initial burden of raising the defense of lack of personal jurisdiction. *Poole v. Sasson*, 122 F. Supp. 2d 556, 557 (E.D. Pa.2000). Once a defendant raises that defense, the burden shifts to the plaintiff to prove that jurisdiction exists.  *See Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992).  Although the allegations in the complaint must be accepted as true for the purposes of a Rule 12(b)(2) motion, the plaintiff may not satisfy his jurisdictional burden by relying solely upon the bare pleadings.  *Poole*, 122 F. Supp. 2d at 557. The plaintiff must instead offer evidence that establishes with reasonable particularity the existence of sufficient contacts

---

[6] Express Metal has not filed an answer to plaintiff's amended complaint.  However, this court never formally dismissed plaintiff's original complaint against Express Metal and Translink.  *See* Order, Docket No. 33 (granting Technip's motion to dismiss "as to Technip"). Accordingly, even though plaintiff's first amended complaint names Express Metal and Translink as defendants, Express Metal preserved this claim and properly raises it here as a motion to dismiss.

between the defendant and the forum state to support jurisdiction.  *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992); *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir.1987).  When affidavits accompany the parties' briefs, factual discrepancies are generally reconciled in favor of the non-moving party, who bears the burden of establishing jurisdiction.  *Pennebacker v. Wayfarer Ketch Corp.*, 777 F. Supp. 1217, 1219 (E.D. Pa.1991).

Two strains of personal jurisdiction exist: general jurisdiction and specific jurisdiction.  General jurisdiction lies when the defendant maintains "continuous and systematic" contacts with the forum, regardless of whether the "plaintiff's cause of action arises from the defendant's non-forum related activities."  *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).  Specific jurisdiction lies when the "non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities."  *General Electric Co. v. Deutz*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Express Metal does not maintain continuous and systematic contacts with Pennsylvania.  It is undisputed that Express Metal has never maintained an office, owned property, or employed any employees in Pennsylvania.  The evidence presented by Robbins – photocopies of Express Metal's website – proves only that Express Metal has the capability to ship the items it produces to Pennsylvania.  Showing that Express Metal is capable of shipping products to and through Pennsylvania is not sufficient to meet plaintiff's burden, which requires establishing that Express Metal actually *does* maintain

contacts with the forum, not that it *could*.  Thus this court does not have general

jurisdiction over Express Metal.

> To establish specific jurisdiction, the plaintiff must satisfy a three-prong test:
>
> First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir.1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting Int'l Shoe, 326 U.S. at 320, 66 S.Ct. 154)

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

The first prong, purposeful direction, requires "a deliberate targeting of the

forum." *O'Connor*, 496 F.3d at 317.  "Thus, the 'unilateral activity of those who claim

some relationship with a nonresident defendant' is insufficient . . . [a]nd contacts with a

state's citizens that take place outside the state are not purposeful contacts with the state

itself." *Id.* (citations omitted).  A contract with a resident from the forum state does not

"automatically establish sufficient minimum contacts in the other party's home forum."

*Burger King*, 471 U.S. at 478-79.  The requisite contacts, however, "may be supplied by

the terms of the agreement, the place and character of prior negotiations, contemplated

future consequences, or the course of dealings between the parties." *Farino*, 960 F.2d at

1223 (citing *Burger King*, 471 U.S. at 479).

Express Metal did not deliberately target Pennsylvania.  Express Metal never

signed any contract with Robbins.  Express Metal contracted with Translink to arrange for

the shipping of the modules, but there is no evidence that Express Metal encouraged

Translink to, or even supposed Translink would, select a Pennsylvania corporation to complete the task.  The terms of the contract between Translink and Robbins required Robbins to haul equipment from Oklahoma to Canada, but there is no evidence that doing so required the modules to pass through Pennsylvania.  Viewed in the light most favorable to Robbins, the contract between Robbins and Translink did provide that Pennsylvania Law would govern any dispute.[7]  However, "such a provision standing alone . . . [is] insufficient to confer jurisdiction."  *Burger King,* 471 U.S. at 482.

In its response to Express Metal's motion to dismiss, Robbins argues that "[b]y knowingly dealing with a Pennsylvania company on this particular transaction, Express made itself subject to specific jurisdiction in the Commonwealth of Pennsylvania." Docket No. 62 at 8.  Robbins cites no specific evidence, however, to support that claim. It is well established that simply doing business with a company is not sufficient to establish purposeful availment of that company's forum.  Having shown nothing more, Robbins has not met its burden and this court will dismiss, without prejudice, the case as to Express Metal due to lack of personal jurisdiction.

---

[7] This choice-of-law clause is contained in the terms and conditions alleged by Robbins to be part of the contract.  *See* Docket No. 1 Exh. 2 ¶ 25.  Since this court considers the issue of personal jurisdiction under the standard of review for a motion to dismiss, it is assumed, *arguendo*, solely for the purposes of the motion to dismiss, that the terms and conditions are part of the contract between Translink and Robbins.

**IV.  ANALYSIS**

**1.  Breach of Contract**

<u>A.  Technip</u>

"It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991).[8]  Plaintiff does not have a straightforward breach of contract claim against Technip because plaintiff has not alleged the existence of a contract between Technip and plaintiff.  Technip is not a party to the contract signed by plaintiff, but rather is named in that contract only as the entity to which the equipment should be delivered.

Plaintiff's complaint alleges, however, that Technip should be found liable either

---

[8] A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487 (1941). This court therefore applies Pennsylvania choice-of-law rules to this case.  Under Pennsylvania's choice-of-law principles for contract disputes, the state with the greatest interest in the controversy, and which is most intimately concerned with the outcome, provides the substantive law governing the dispute. See *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 881-82 (3d Cir.1984).  As a general matter, Pennsylvania courts honor choice of law provisions within a contract. *Nationwide Mutual Insurance Co. v. West,* 807 A.2d 916, 920 (Pa. Super. 2002).

None of the parties has questioned the application of Pennsylvania law to this diversity case, and the parties cite extensively to cases that apply Pennsylvania law.  In the submissions to this court, no reference has been made to any controlling choice-of-law principle.  Technip, however, does state explicitly that it based its motion on Pennsylvania law.  Docket No. 47 at 9 n. 2. And although Translink contends that it never agreed to the Terms and Conditions that Robbins alleges the parties to have agreed to, it is nevertheless notable that those Terms and Conditions contain a choice-of-law clause naming Pennsylvania law as the governing law for any dispute between "RMT and Shipper."  *See* Docket No. 1 Exh. 2 ¶ 25.  In consideration of these factors, and because this litigation is taking place in Pennsylvania and involves a contract signed by a Pennsylvania corporation (Robbins), this court applies Pennsylvania law here.

(a) because plaintiff is a third-party beneficiary of the contract between Express Metal and Technip or (b) as the "disclosed principal" of Translink, who was acting as Technip's agent.

*i.  Whether Robbins is an intended third-party beneficiary of the contract between Express Metal and Technip*

Although privity of contract is typically "'a mandatory prerequisite for a party to bring a breach of contract claim' . . . parties who lack privity can bring a cause of action for breach of contract if they can show themselves to be intended third party beneficiaries of the contract." *Caciolo v. Masco Contractor Services East, Inc.,* 2004 WL 2677170, at *2 (E.D. Pa. November 22, 2004); *cf.* Restatement (Second) of Contracts § 306 (1981) ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." ).

In *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), the Pennsylvania Supreme Court adopted the test set forth in the Restatement (Second) of Contracts for distinguishing intended beneficiaries from incidental beneficiaries.  *See Chen v. Chen,* 893 A.2d 87, 93-94 (Pa. 2006).  The Restatement states:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981).  Interpreting that test, the Pennsylvania

Supreme Court has concluded that it represents a two-part inquiry.  The first part –

whether recognition of a right to performance in the beneficiary is appropriate to

effectuate the intention of the parties – "sets forth a standing requirement that leaves

'discretion with the court to determine whether recognition of [intended] beneficiary

status would be appropriate.'" *Chen*, 893 A.2d at 94 (quoting *Scarpitti v. Weborg,* 609

A.2d 147, 150 (Pa. 1992)).  The second part – whether performance will satisfy an

obligation of the promisee to pay money to the beneficiary *or* whether the circumstances

indicate that the promisee intends to give the beneficiary the benefit of the promised

performance – defines "'the two types of claimants who may be intended as third party

beneficiaries.'" *Id.* (quoting *Scarpitti v. Weborg,* 609 A.2d 147, 150 (Pa. 1992)).

   As a threshold matter, this court observes that "plaintiff cannot identify a written

contract between [the parties] that expresses an intent to benefit plaintiff."  *Mack v. AAA*

*Mid-Atlantic, Inc.*, 511 F. Supp. 2d 539, 545 (E.D. Pa. 2007) (rejecting plaintiff's third-

party beneficiary theory of recovery at the summary judgment stage).  In the absence of

any written evidence of intent in the contract, this court exercises its discretion to

determine whether recognition of intended third-party beneficiary status is appropriate.

   In support of its position, Robbins raises one example that it contends shows that

Robbins was an intended beneficiary of the contract between Express Metal and Technip.

Robbins notes that when Express Metal contacted Technip to ask for extra money, above

and beyond the terms of the original Technip-Express Metal contract, to cover increased

shipping costs, Technip provided that money.  *See* Deposition of Robert Evans, Docket

No. 52 Exh. 8 at 13-16.  Although Technip's Robert Evans maintained that Technip's payment "wasn't contractual" and was made only because it was "good business," *id.* at 33-34, Robbins contends that Mr. Evans's explanation is "not credible" and, at the very least, is an "excuse" that raises a "credibility issue for the trier of fact." *See* Pl. Repl. Br., Docket No. 52 at 5.

Robbins's challenge to Evans's uncontradicted testimony is not sufficient to raise a credibility issue.  The Third Circuit instructs:

> It is by now axiomatic that "a nonmoving party ... cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514-15); see also *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1165 (3d Cir. 1990). On the other hand, certain scenarios may arise where a material fact cannot be resolved without weighing the credibility of a particular witness or individual – such as when the defendant's liability turns on an individual's state of mind and the plaintiff has presented circumstantial evidence probative of intent."

*Schoonejongen v. Curtiss-Wright Corp.,* 143 F.3d 120, 130 (3d Cir. 1998).  Here, where Robbins has not even presented circumstantial evidence as to why Evans's deposition testimony is not credible, there is no credibility issue that necessitates a trial.  This court will therefore credit Evans's testimony.

Once Evans's testimony is credited, there remains no persuasive evidence that Robbins was an intended third-party beneficiary of the Technip-Express Metal contract. Technip and Express Metal contracted for the purpose of delivering modules from Express Metal to Technip, not for the purpose of benefitting a transportation company. Express Metal itself never hired Robbins; Robbins was retained by Translink, the freight broker.  Any contract for the manufacture of goods that requires transportation of those

goods will create incidental beneficiaries in the form of transportation companies, but more evidence of intent than a manufacturing contract, standing alone, is required to transform one of those potential incidental beneficiaries into an intended third-party beneficiary.

*ii. Whether Translink acted as an agent for Technip*

Pennsylvania follows the Second Restatement of Agency's (hereinafter "Restatement") rule that a "disclosed or partially disclosed principal[9] is subject to liability upon contracts made by an agent acting within his authority if made in proper form and with the understanding that the principal is a party." *Casey v. GAF Corp.*, 828 A.2d 362, 369 (Pa. Super. 2003) (quoting Restatement (Second) of Agency § 144 (1958)). "The principal may also be subject to liability . . . although the contract is not made in his name or by a description sufficient to identify him"; in such a case, "[f]or the purpose of identifying the principal and charging him upon a contract in writing, parol evidence is admissible." Restatement § 144, comment a. Where such an agency relationship exists, the "agent . . . is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability." *Casey*, 828 A.2d at 369 (quoting *B & L Asphalt Indus., Inc. v. Fusco*, 753 A.2d 264, 270 (Pa. Super. Ct. 2000)) (alterations in original).

In certain instances, apparent, as opposed to actual, authority may be sufficient for

---

[9]A principal is partially disclosed "[i]f the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity." Restatement § 4(b).

one signatory to a contract to bind a third-party who has not signed the contract.

"Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons."  Restatement § 8.

Technip contends that the facts as pled in the amended complaint, and the documents attached thereto, do not demonstrate that Translink was acting as an agent for Technip.  Specifically, Technip notes that the agreements between Translink and Robbins only mention Technip in order to designate Technip as the place of "Destination" and "Delivery."  In contrast, the Translink-Robbins purchase agreement, which is only signed by Translink's representative, expressly allocates payment responsibilities to Translink by listing Translink as the "Bill-To" party.

Robbins's sole rejoinder is that "Trans Link acted on its own behalf, but also on behalf of its clients, Technip and Express" and therefore Technip, as a customer of Translink, was "a party to the contract, having given Trans Link authority to bind it."  Pl. Repl. Br., Docket No. 52 at 5-6.  Apart from this bald declaration, however, Robbins presents no parol evidence to support the claim that either a) Technip actually gave Translink authority to bind it, or b) Translink conveyed to Robbins that it had the authority to bind Technip.

The various Robbins-Translink agreements contain no indication in writing that Translink represented itself to Robbins as an agent of Technip.  Moreover, Technip itself never contracted with Translink, and the agreement between Technip and Express Metal provided that Express Metal was responsible for the payment of shipping.  In the absence

of parol evidence regarding the intentions of the parties, it stretches the principal-agent

theory too far to find an agency relationship between Technip and Translink.  Moreover,

if Technip had been a disclosed principal — or even a partially disclosed principal — to

the Robbins-Translink contract, Robbins would, by definition, already be in possession of

facts to support such a theory; after all, the very definition of a disclosed or partially

disclosed principal is that one party (in this case Robbins) is on notice that the other party

(in this case Translink) is acting as an agent for a principal.  Because Robbins has

provided this court with no parol evidence of its own, its agency theory of liability fails.


B.  Translink

Robbins moves for summary judgment against Translink on Robbins's breach of

contract claim, and Translink has not made a motion for summary judgment as to

plaintiff's breach of contract claim.  Robbins alleges that the plain language of the

contract between Translink and Robbins obligates Translink to pay for any additional

costs incurred due to the alleged weight underestimates of the modules.  The language

allocating additional costs referred to by Robbins is contained in the "Terms and

Conditions" document provided by Robbins.

In opposition to Robbins's claim, Translink offers the deposition testimony and

affidavit of Translink President Ted Vogle.  Vogle states that he neither signed nor was

presented with the "Terms and Conditions" that form the basis of Robbins's claim.

Accordingly, there is a material dispute of fact as to whether the Terms and Conditions

were in fact part of any agreement between Translink and Robbins.  Moreover, the Terms

and Conditions were allegedly part of the Transportation Estimate /Purchase Agreement,

which Robbins never signed.  A trial is therefore appropriate on the issue of whether, and

if so, to what extent, Translink breached its contract with Robbins.

### 2. Tort Claims

Both Translink and Technip have moved for summary judgment on the ground that

the gist-of-the-action doctrine precludes plaintiff's cause of action for fraud and negligent

misrepresentation for providing false module weight information.

Under this doctrine, "[w]hen a plaintiff alleges that the defendant committed a tort

in the course of carrying out a contractual agreement, Pennsylvania courts examine the

claim and determine whether the 'gist' or gravamen of it sounds in contract or tort."

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa.

1999).  That is, the court must determine the source of the duty allegedly breached.

*Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc*, No. 01-1083,

2002 WL 126634, *6 (E.D. Pa. Jan. 31, 2002). If the duty flows from an agreement

between the parties, the gist of the action is contractual; but if the duty breached is

imposed on society as a matter of social policy, the gist of the action is in tort.  *See id*.

With regard to fraud claims, Pennsylvania courts have distinguished between

"fraud in the performance" and "fraud in the inducement," reasoning that "if the fraud did

not concern the performance of contractual duties, then the gist of the action would be the

fraud, rather than any contractual relationship between the parties."  *Sullivan v. Chartwell*

*Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005) (declining to bar claim of fraud in

the inducement); *see also eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa.

Super. Ct. 2002); *Sunburst Paper, LLC v. Keating Fibre Intern., Inc.*, 2006 WL 3097771, at *2-3 (E.D. Pa. Oct. 30, 2006) (discussing Pennsylvania cases holding that fraud claims survive only where the fraud is "collateral to the contract").

Robbins waives its argument as to Translink.[10]  Plaintiff responds to Technip's motion by quoting at length from cases discussing the exception for fraud in the inducement.  *See* Docket No. 52 at 10.  However, plaintiff does not describe how plaintiff's fraud claim falls within that exception.  Nor is it obvious how the claim might do so, given that the alleged tortious conduct is the same conduct alleged to have breached the contractual agreement that allegedly existed.  After all, Technip entered into its contract with Express Metal – the only contract signed by Technip that is pertinent to this matter – before any weight figures were ever communicated or represented to Robbins.  There is thus no way for Technip's statements to have induced Robbins to contract with Technip.

Plaintiff also contends that "the tort claim is a pleading in the alternative based on multiple potential factual scenarios that discovery is needed to flesh out." *Id.* at 11. Discovery in this case concluded on April 21, 2008.  *See* Order, Docket No. 43 (filed March 7, 2008).  Robbins's reply to Technip's summary judgment motion, meanwhile, was filed on April 23, 2008.  *See* Docket No. 52.  It is therefore unclear to this court exactly what Robbins means by its statement regarding the necessity of discovery.

_____

[10] Robbins responds to Translink's argument by stating that "provided the trier of fact determines Trans Link to be contractually bound, and enforces the contract signed by Trans Link, which is being sought herein, then the negligence claim is moot."  Docket No. 62 at 7.  This court interprets this statement by Robbins as an acknowledgment of an opinion that this court shares: that Translink's gist-of-the-action argument is valid.

Nevertheless, having found that there was no contractual relationship between plaintiff and Technip, *see supra*, this court will briefly address plaintiff's tort claims against Technip by analyzing whether the elements of those torts can be proven.

The Third Circuit has stated:

> To establish a claim of fraudulent misrepresentation under Pennsylvania law, [one must] prove by clear and convincing evidence: (1) a false representation of an existing fact or a nonprivileged failure to disclose; (2) materiality, unless the misrepresentation is intentional or involves a nonprivileged failure to disclose; (3) scienter, which may be either actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage to him as a proximate result.

*Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1142 (3d Cir. 1993). For the tort of negligent misrepresentation, Pennsylvania courts require proof of the following elements: "(1) misrepresentation of a material fact (2) made under circumstances in which the misrepresenter ought to have known its falsity (3) with an intent to induce another to act on it and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Ca' de Be' Imports, Inc. v. Zim-American Israeli Shipping Co., Inc.*, 2005 WL 746262, at *5 (E.D. Pa. 2005) (citing *Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. 2002)). Unlike fraudulent misrepresentation, which must be established by clear and convincing evidence, "negligent misrepresentation may be proven by a preponderance of the evidence." *Id.* (citing *Fort Washington Resources, Inc. v. Tannen*, 858 F.Supp. 455, 461 (E.D.Pa.1994)).

In order to prove either tort, a plaintiff must prove "justifiable reliance on the misrepresentation." However, the deposition testimonies establish that Robbins never relied on the weight estimates provided by Technip. Instead, Robbins relied on the

weight estimates of 220,000 and 230,000 pounds, which were provided by Express Metal and Translink.  Robbins cannot, therefore, make out a claim for negligent misrepresentation or fraudulent misrepresentation against Technip.

**3. Interstate Commerce Act**

Robbins contends that all three defendants are liable for an "unpaid freight bill" in violation of 49 U.S.C. §§ 10741, 10761, and 10762.  First Amended Complaint ¶ 41. Additionally, Robins contends that it is entitled to recover liquidated damages for all costs incurred in collection of that bill pursuant to 49 C.F.R. 1320.2(g)(1) and 49 U.S.C. § 10701.  First Amended Complaint ¶ 42.  Both Translink and Technip have moved for summary judgment on these claims.  In view of this court's previous order dismissing these statutory claims as to Technip alone, plaintiff notes in its amended complaint that it includes these claims as to Technip again "only for the purposes of preserving the right to appeal."  First Amended Complaint ¶ 45.

On October 29, 2007, this court dismissed the statutory claims contained in plaintiff's original complaint – which are identical to the statutory claims in the amended complaint – against Technip.  *See* Order, Docket No. 33.  Ruling on the record at the conclusion of oral argument on those claims, I stated that there was not "anything left . . . of a federal statutory construct . . . that gives you a federal cause of action for nonpayment for motor transport" of freight.   Transcript of October 27, 2009 at 10.

The same reasons that led this court to dismiss plaintiff's statutory claims against Technip apply equally to Translink.  First, § 10701 and § 10741 apply to rail carriers, not

motor carriers.[11]  Second, § 10761 and § 10762 no longer exist, following their repeal in

1995 by Pub. L. 104-88, § 102(a).[12]  Third, plaintiff's cited regulation, 49 CFR § 1320,

does not exist.  Plaintiff's briefing in support of its statutory claims is nearly identical to

the unsuccessful argument it made in opposition to Technip's motion to dismiss, and

those arguments have already been rejected by this court on the record.


## V.  CONCLUSION

Plaintiff's statutory claims fail as to all defendants because those claims are based

on statutes and regulations that are either (1) no longer in effect or (2) inapplicable to

disputes involving the trucking industry.  This court does not have personal jurisdiction

over Express Metal because Express Metal neither maintains continuous, systematic

contacts with Pennsylvania nor purposefully availed itself of this forum.  Plaintiff's tort

claims are barred by the gist-of-the-action doctrine, and, in any event, fail as to Technip

because plaintiff never relied on a material misrepresentation made by Technip.  Technip,

but not Translink, is entitled to summary judgment on plaintiff's contract claim because

Technip was not a party to any contract with plaintiff, or party to a contract to which

plaintiff was a third-party beneficiary, or party to a contract in which Translink acted as a

principal for Technip.  Because material issues of fact remain regarding the contract

---

[11]The sections fall within Part A of Title 49, which is devoted to rail. *See* 49 U.S.C.
§ 10701 (various rules applying to rail carriers); *id.* § 10741 ("Prohibitions against
discrimination by rail carriers"); *see id.* § 10741(2) (providing that "a rail carrier engages in
unreasonable discrimination when it charges or receives from a person a different compensation
for a service rendered, or to be rendered . . . than it charges ro receives from anther person form
performing a like and contemporaneous service").  The provisions for motor carriers fall within
Part B, §§ 13101 *et seq.*  Part C concerns pipeline carriers, §§ 15101 *et seq.*

[12]As Technip notes, Chapter 107 of Title 49 now ends at § 10747.

dispute between plaintiff and Translink, that claim alone (count one of plaintiff's complaint) remains before this court for trial.  Robbins is, of course, free to refile its complaint against Express Metal in an appropriate court.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBBINS MOTOR TRANSPORTATION, INC.,<br><br>     Plaintiff<br><br> v.<br><br>TRANSLINK, INC.<br><br>and<br><br>EXPRESS METAL FABRICATORS, INC.<br><br>and<br><br>TECHNIP USA CORPORATION,<br><br>     Defendants | CIVIL ACTION<br><br>No. 07-150 |

**ORDER**

 **AND NOW**, this 26 day of March 2009, for the reasons stated in the foregoing memorandum, it is hereby **ORDERED**:

  1. Defendant Express Metal Fabricators, Inc.'s motion to dismiss, *see* Docket No. 56, is **GRANTED WITHOUT PREJUDICE.**

  2. Defendant Translink, Inc.'s motion for summary judgment, *see* Docket No. 57, is **GRANTED** as to Counts 2 and 3 of plaintiff's complaint**.**

  3. Defendant Technip USA Corporation's motion for summary judgment, *see* Docket No. 47, is **GRANTED.**

  4. Plaintiff's motion for summary judgment, *see* Docket No. 62, is **DENIED**, leaving count one of plaintiff's complaint to be tried against Translink.

       /s/ Louis H. Pollak
       Pollak, J.